I would request to reserve two minutes of my time. Your Honor, we are arguing that the District Court improperly granted similar judgment based upon the defense of qualified immunity, in this case, in a circumstance where there are significant stark and material disputes of material fact. There are numerous examples of this in the record. What's important here is that the officer in the case did not concede the version of facts stated by the appellate. In particular, the plaintiff indicated that she placed her hand on an officer's arm while attempting to tell him that he was arresting the wrong person. The officer says that she grabbed him in the other officer's arm with such force that he had to make two attempts to pull her off of him, and that she grabbed with such force that she left red marks on his arm for a minute, which he claimed he had photographed and preserved as evidence, but which were never produced in the case. The officer says, even though the officer who was grabbing supposedly says that he was not even aware she had touched him in the case. He didn't even perceive that she was there at that moment. The plaintiff says that the officer grabbed her hair in her shoulder and violently threw her down to the ground, causing the injuries that we talked about. The officer says, no, I pulled her away and gravity took her to the ground in one place, and another place says I assisted her to the ground. The plaintiff says that the officer then, who weighed 275 pounds compared to her 118 pounds, then placed his full body weight on her, producing further pain or injury. The officer disputes that he did that. So we have multiple distinctions of fact here, and this court has said previously that when the legal question of qualified immunity turns upon which version of the facts, when it says summary judgment cannot be granted. I think that's right, counsel. Could I ask you to move on? We're not supposed to be reviewing those kinds of decisions. Is that correct? The factual ones. We're not supposed to be reviewing those. We're going to review the legal issues. The legal issue, though. That's what I'm asking about the legal issue. What is your best case or two? And the Supreme Court is very fastidious about this and has been within the last week. They want some case law which says you can't do this. And by this, we mean the version of the facts as the court assumed them in favor of the plaintiffs. So we can sort of assume that she tapped him on the shoulder or whatever and strongly but verbally said that's not the right person. And the police person who's the defendant saw that as a physical interference with an arrest in a tenuous situation. What's the best case you have for saying that that's a clearly established constitutional violation? Well, first of all, I think it's important to note that I think the precedents establish that what's required is that a case have the substantially similar principles in them. And the cases that we have studied in our group, including in particular, I think perhaps the closest one would be Smith v. Stonebringer, which is a case where a mother physically placed herself between an officer and her son in an attempt to interfere with or stop the conduct of the officer in reaching her son. In that case, the individual was only bumped into a wall, causing injury by the officer. Similarly to here, though, there was a dispute as to whether that was gratuitous or intentional. And the court said in that circumstance that summary judgment was not appropriate and qualified to be when he was not available in that circumstance. The same reason I asked the opposing counsel whether there was any distinction between this case and Smith. Any other cases in case he comes up with a good distinction? Well, if I may, I think the fundamental principle, Your Honor, is that you look at the totality of the circumstances and determine what the... In qualified immunity cases, it's chancy to start relying on the totality of the circumstances. You're likely to get overturned by the Supreme Court saying, no, you need more than that. Well, the cases that we have cited, though... That's what I'm asking. I'm asking which are the strongest cases. I think the Pershell case... Spell it. Pershell, P-E-R-S-H-E-L-L versus Kirby. Thank you. That's a case where a leg sweep was called unconstitutional. And this is the relevant part. When the defendant was unarmed and did not swing or strike at the officer, the point of it being that the cases that we cite deal with circumstances where an individual really was not a threat to the officer and did not engage in any truly aggressive conduct toward the officer. And in that circumstance, the uber-aggressive response of the officer was found to be unconstitutional. And I think that's the case here. I'm taken by the language that the court used in Martin v. City of Broadview Heights, which said you've got to zoom in close enough to ensure the right is defined, but not so narrowly as to defeat the purpose of Section 1983. They even used an extreme example in that case. It wouldn't be the right to be free of assaults by left-handed police officers during Tuesday siestas. That's the language that was quoted in that. So the issue here is whether or not it's clearly established that a minimally threatening suspect could have significant force applied to them when considering the totality of those circumstances. And in this case, we have a slight 62, I believe, year old, 118-pound female who verbally is saying, I think you've got the wrong man here, who just puts her hand on an officer's arm with such a small degree of force that the other officer didn't even perceive that it happened. It has to be the perception of the defendant, though, right? That's correct, Your Honor. So what if, while in fact maybe it was a tap on the shoulder and an explanation, this is the wrong person from the perspective of the defendant. What was his name? Officer Davis. Davis. From the perspective of Davis, this is somebody physically getting in the way of an arrest. And that may be, and we have not suggested that Officer Davis can do nothing. Right. But he had a whole range of things available to him under the guidelines that were appropriate to him. And that's another thing that happened in the court. But that's where the court's required to look at that totality of circumstances and look at what threat this individual actually posed. And I might also add that the district court completely ignored the fact that an expert witness testified in this case that the conduct of the officer was unreasonable, unwarranted, unnecessary, and inconsistent with the use of force continuum in his own department. And that he had multiple other things available to him which would not have subjected this person to this degree of force. The expert even offered the opinion that she did not represent a threat to this officer in this circumstance. Your opposing counsel relies extensively on the video. Do you want to respond to that argument? Oh, I think the video is... There's different aspects of the video. I watched the video, but I'm wondering what you say about the video. They say that it shows that she wasn't just merely tapping or talking. She was acting more vigorously. And they also say that it shows that there was no force, no bodily weight put on her when she was down. I think that's inconsistent with the video. The fact is that you can... About this distance, about the shadow, I was interested. There was an argument about the shadow. Sure. Can you respond to that? You can hear Ms. Moser's daughter say at one point, get off of my mother. The suggestion by Officer Davis that he didn't apply his weight to her was inconsistent with that, and certainly something that a jury could utilize in this case. And that's where I had difficulty, because when there are stark factual disputes like this, this court has consistently said that summary judgment is not appropriate in the... The statement that you quoted earlier about the officer saying, I didn't even know she was there, I didn't feel her, that's on the video, correct? It's in his deposition. It's in his deposition. It may be in a later place where he said that, but you can see that in his deposition. I don't think that that is... You can't hear that on the video? Afterwards. It's a rather long body cam video, longer than just the episode. It goes on for a long period of time afterwards, and there's some conversation that took place later where the officer appears to acknowledge that. Okay. But this is at the time of the event, even in broader terms. Later on, the officer, whose arm was touched by Ms. Moser, said, I didn't know she was there, I didn't feel her. So he didn't say it during the moment that the incident happened, but later on... Later on on the 10th. Yes, I believe at the hospital, actually. At the hospital, yeah. And it is of note that the officer in this case, Mr. Davis, at the end of his body cam video, acknowledges that this is bad and then says, almost in a bragging way, this is not my first old lady. That's on the video also. So he seemed to have an awareness that what he had done was not correct and appropriate. So it's also important that the court examine these two incidents discreetly. There is this takedown incident that we've talked about, and then there's the second incident of placing the weight on her while she's prone on the ground. It begs all credibility to suggest that this 275-pound officer, that's his testimony, was unable to restrain this 118-pound woman laying on the ground without placing his weight on her. And she clearly cries out in additional pain while this is going on on this porch. So respectfully, Your Honor, what we suggest to the court is that if you look... First of all, if you follow the procedural precedent in this circuit, the court is required to find that these credibility determinations, which the court would have to make in order to resolve these factual disputes, are actually in the province of the jury, not of the judge. It's not possible to conclude that Officer Davis was telling the truth without concluding that the plaintiff was not telling the truth. And so at some point, a jury would have to decide whether or not credibility comes into play in determining these factual disputes. The court's not in a position to do that. So the judge conceded, did he not, that there were disputed facts or even... I don't know that he used the word material, but he indicated going through the analysis and the constructions that there were disputed facts on many of these issues. Is that correct? Well, he said there were disputed facts. He said that he would resolve them in favor of Ms. Moser, but that procedurally is not what's supposed to take place in this circumstance. The defendant, when claiming qualified immunity, is required to concede the facts as stated by the plaintiff in that circumstance. He can't get the benefit of disputing all of them and then saying, oh, it's okay, which is what the district court did here. And that is procedurally a problem because that's not where summary judgment is appropriate in that circumstance. But under Scott v. Harris, if you've got a video, you can sometimes. Yes, but it's also part of the judge's decision that you can't resolve all of these disputes by video. It's dark. It's just not clear. We'd just have to second-guess that by looking at the video. I'm sorry? We would just have to second-guess that by looking at the video ourselves under Scott v. Harris. That is correct. You do have to do that, but you also have to listen to the video and the conversation that takes place. And frankly, some of that supports the position as much. Thank you. Good morning. May I please report? My name is Benjamin Laudermack. I have the privilege of representing Tim Davis Jr. in this matter. I believe my colleague represents the city of Etowah and will respectfully request two minutes of my time. Or maybe I'm taking 13 minutes of his time. I'm not sure. That's fine. In this matter, we don't even need to get to the qualified immunity argument. As the district judge correctly noted, there wasn't a constitutional violation in this case. We can take every fact that Ms. Moser has pled and has alleged. There is still no constitutional violation. So you say that actually there's nothing to suggest excessive force was exemplified in this case? Yes, Your Honor, that's correct. I'll give you an example of what the district court was referring to as their disputed facts, but not material facts. In the complaint, they plead that Ms. Moser was thrown off the porch and pounced upon. The video disputes that. Clearly, she was not. That's a disputed fact. But it's not a material fact because the video reveals that she was not thrown off the porch. The complaint makes no allegation of kneeing or kneeling. The word knee or kneeling or knee or knee strike never shows up in the complaint. It doesn't even show up in their response to summary judgment. The district judge went a step further of splitting these two events, as the court was certainly entitled to do. But that was not pled. That was not an issue in this case until the district judge went there. He was correct. We have no argument with him going there. The tackling issue, that's my word. There's very little dispute that she wasn't tackled or thrown to the ground. We're certainly going to concede that. There's also a dispute that she ended up on the ground, whether she was assisted to the ground, pushed to the ground, tackled and landed on the ground. She got on the ground from a standing position. Somehow she got there, so that's not. Well, the ground, that's my word, but it's actually the porch. It is the porch, yes, Your Honor. There's no dispute there. That's absolutely correct. Absolutely correct. No dispute. And once she made contact with the porch, she did express or indicate some evidence of injury or some allegation of injury. That is also correct, Your Honor. Her specific testimony in her deposition was she knew the moment her hip made contact with that porch that she was injured. And her further deposition testimony is I wasn't injured after that point. That was sworn deposition testimony. I point blank asked her those questions. She point blank answered in that manner, and that's, of course, in our brief. So if you do take the kneeling and separate it, it was we submit the minimalist contact. Certainly, Judge Rogers noted the shadow effect on the wall. That's there in the video. Yes, you have to break it down. No, I mean, you said that. You know, when I read your brief, I thought this is compelling, assuming the video supports it. And then I watched the video, and it didn't support it. In fact, it's square one. I just wasn't persuaded. You said the shadow. The shadow, I mean, doesn't show me whether he was leaning with force or not. It doesn't show that to me. I looked at it several times. Admittedly, it's a strobe-like effect. So you have to pause it. You have to stop it. And when you do, you can clearly see him upright. The other point that I'm not—we will not concede that even if he did lay on top of her, that that's excessive force. But in the circumstances of this case, there's certainly no case out there saying— What about grabbing her hair and throwing her to the ground? Why doesn't that fall under Smith v. Stoneberger? Well, I guess that's what I'm— Smith v. Stoneberger. Do you want to say that didn't happen, or do you want to say the case is distinguished? I will say both. In Smith v. Stoneberger, there was no throwing of the hair. In that matter, Your Honor, there was a— All you're doing is throwing against the wall in Smith, right? She was. And before that, if you take her facts as we must for this hypothetical, she did not make any contact with the officer. She did not commit any crime before that gratuitous or shoving occurred. In this case, Ms. Moser is plead guilty to Tenancy Code Annotated 3916602A that specifically states, in relevant part, it is an offense for a person to intentionally obstruct a law enforcement officer from effecting a stop, frisk, halt, arrest of any person by using force against the law enforcement officer. That's inescapable. But the officer said, I didn't feel anything. I didn't even know she was there. Now, I agree that his partner said, you know, he saw this and that there was a mark or something like that, but the officer who was effecting the interrogation, arrest, or whatever said, I didn't feel anything. Two comments, if I may, on that point, Your Honor. One, we must look at this through the objective eyes of Officer Davis, not Officer Parham, who was trying to handcuff the aggravated domestic felon. Very dangerous situation, as we all know, in law enforcement. The second point is, I blanked out on it, so I apologize. But the second point on that is, I blanked out. I apologize. Let's assume for the moment that he grabbed her by the hair and threw her on the ground with sufficient force that later turned out to break a bone. Assuming that, still gets qualified immunity because it's an arrest situation or what? Yes, Your Honor. There are ample cases. That's pretty harsh, isn't it? I mean, don't we have cases that say that you can't do that kind of thing? No, Your Honor. Statistically. Well, why is Smith different then? Smith, there was no pulling of the hair. There was no crime committed. There was a very minor crime that had been committed. There was no dangerous situation in the dark on an elevated porch with a number of citizens around, and probably most importantly in Officer Davis's mind, a very dangerous arrestee. Well, the person who pulled the hair allegedly was? My client. He pulled her hair. Okay. And they're saying in Smith it was worse than that? Oh, no. Smith, there was no hair pulling. It was a shove. A forearm shove. But that was enough to overcome qualified immunity in Smith. So why would it be something worse? Under the circumstances, that was not worse. You have to take it under the totality of the circumstances. Let me understand this. Your argument is we have a case that says a plaintiff stepped between an officer and the plaintiff's son because the officer was trying to arrest the son, and that was held. That did not result in a grant of qualified immunity. And here, your client, either by grabbing, I think he said, I reached around and touched her shoulder and then grabbed the other side and escorted her down to the ground or allowed her to go down to the ground. So he is admitting it was his action that threw her to the porch ground. And you're saying that Smith supports your position? Under the totalities of circumstances, there's facts. Those are not similar whatsoever. So they're not similar whatsoever against your case. They're not similar in a way that does not support your argument. The facts, the totality of the facts aren't even in the same ballpark. And that is because qualified immunity was denied in Smith when the plaintiff only stepped between. This plaintiff only touched. We're in agreement that there's a dispute about exactly how much it was a touch. But they did not qualify immunity in Smith, and your case is more egregious. Your case resulted in someone admittedly being thrown to the porch, breaking a hip and a femur due to the force of that fall. Yes, Your Honor. Now, why does Smith protect you rather than show that your client should not receive qualified immunity? Because the facts in the officer's objective eyes are not remotely similar. And that's what we have to review this under. That's what we're required by the Supreme Court. In Judge Ryder's statement, this opinion that came out two weeks ago, the rebus, mispronounced this, Cordis Luna opinion, again, once again, it knocked down the Ninth Circuit and said, these have to be similar facts. Similar but not exact, but I think we're talking past each other because what the case law establishes is areas that are inappropriate and do not qualify for qualified immunity and areas that may be qualified. I'm asking you why Smith doesn't show that this was inappropriate to grant qualified immunity. Yes, Your Honor. Because in this situation, it was an aggravated domestic assault felon who had not just been to the scene once. He turned away when there was a gun, and he came back. These officers knew this gentleman was coming back onto this porch, despite the fact a gun had already been brandished towards him. There's no talking about it. This is a chaotic situation. Stoner was not chaotic. He just simply had a verbal objection. Don't arrest my son. So are you really relying on the fact that out of this situation, when you talk about the fatality of circumstances, that Ms. Moser actually pled guilty to a crime? Is that why you're saying that this is so different than Smith, because her actions rose to the level of a criminal charge? Is that the difference? Not necessarily. I attempted the heck argument with the district judge to knock me down on that, and I'm not bringing that up here and having a heart, Your Honor. And I did remember. Thankfully, it wasn't tomorrow. The next point I was going to make was you had asked me about the officer not feeling the contact. In the same context, the same officer said he knew she was there and was interfering and was trying to get her away with his elbow. But what the context of his statement was, I didn't feel any pain, per se. That's the context. She is actively interfering to the point where he has to stop doing what he's supposed to be doing, arresting this aggravated domestic assault. But then his statement is way more consistent, then, because he said other things at other points in the record, didn't he? No, Your Honor. No. Was his explanation of the elbow in his deposition? I believe it is in his deposition. I think it's also in the same context frame of when they were talking about it on the body cam after the fact. What do you make of the statements that are on the record at the time where your defendant was justifying what he did on the theory that she touched an officer? That he had to protect his partner under those circumstances. No, but he didn't say, I need to protect my partner. He said, you touched my officer. You don't touch my officer. It kind of looks like he's punishing her for touching this officer, which he can do, but he can't do it with excessive force. That's the problem. Well, under that set of circumstances, that's verbal. There is no use of force that occurred after that. Sorry, I don't understand that. The incident that Judge Rogers is referring to is when she's on the porch and she says, I didn't touch your officer, and he says, yes, you did, and that's the context. There was no use of force after that statement was made. It was his explanation of why he took her to the ground.  Because you don't touch my officer, right? You're violating the law and interfering with my officer's lawful arrest. Right. That's a different thing. He's saying it's necessary. It is what it is. We can interpret it various ways, but it doesn't fit exactly with your scenario that he had to put her to the ground in order to allow this arrest to occur. I think it chimes up. Would you summarize, please? Very briefly, we have cited three cases. We think they're on much more similar factual grounds than the cases relied on. What's your best case? Our best case is probably the – maybe it's a tie. We'll go with the Lyons v. City of Xenia case. Spell it. L-Y-O-N-S v. City of Xenia. That's X-D-O-N-I-A. What about the other one? The Stanfield v. City of Lima case. We'll look at those. Thank you. You're welcome. John was on that panel as well, and it's more persuasive. Thank you. Thank you. May it please the Court. Good morning, Your Honors. My name is Aaron Wells. I'm from Chattanooga, Pennsylvania. I represent the City of Etiwala in this case. This is my first time being before this court, or being before this court, I'd just like to say it's very much a privilege to be here this morning. You're welcome. I don't have very much time, so I'm going to jump right to it. But if the Court has any questions, I'd be happy to answer some of them. I have a question. Why doesn't what we do with your case just depend on the other case? Because – If we rule one way, you're still in, and if we rule the other way, you're off. So, I don't know. Not necessarily, Your Honor. Well, you might have an alternative argument that wasn't raised by the District Court. That's absolutely correct. I mean, the District Court didn't decide it. If we send it back, they can decide that argument then, right? Rather than having us decide it. They could, Your Honor. We raised it, the policy procedure argument, in our brief on motion for summary judgment. I believe that this Court can address it here. We could, but we wouldn't have to. It depends on which way it goes. Exactly. Sorry to interrupt. That's fine, Your Honor. You're doing great. Go ahead. You're going right down the path I was headed. As the Court knows, in Section 1983 claims, in addition to showing a constitutional violation, Ms. Moser would also have to show that violation is caused by some unlawful policy procedure or custom of the city. In the complaint, relevant to this appeal, she raises two policies and procedures. The policy of excessive force, and that Officer Davis was inadequately trained and supervised. Just a couple quick points about the evidence in the record about those two theories. Number one, it's undisputed that the city's excessive force policy in effect at the time was lawful. Number two, there's no evidence in the record that Officer Davis was inadequately supervised. And number three, the only admissible evidence in the record regarding Officer Davis' training was that it was adequate, it was lawful, it was in line with Tennessee law enforcement standards. I just point to the direct court's attention to a couple items in the record that support that. Document 41-6, that's our expert, law enforcement expert's opinion that we disclosed, as well as Document 71, which is the trial court's order on a fair motion that we filed regarding the plaintiff's law enforcement expert. There being no constitutional violation in this case, Your Honor, in addition, the city can also be dismissed because the only evidence in the record regarding these policies, procedures, and customs was that they were lawful. That's all I have. Thank you very much. Thank you for your argument. There are two points that I'd like to make, and point to. In Adams v. Blood County, in fact, I think Judge Strange authored this opinion, the language is again repeated, factual disputes precluded grants of qualified immunity. That appears repeatedly in multiple cases. Now, I will concede that many of those deal with interlocutory appeals, where officers are appealing the denial of that, but the precedent is still the same. Unless the officer is conceding those facts for purposes of the motion, it's not appropriate for summary judgment to be granted. With respect to the municipalities argument, I think it's important to note that the facts in this case are that the City of Etowah Police Department maintains no records whatsoever concerning training received by its officers. Not the first document. The only thing that they rely upon is a statement that the officers continue to have their post-certification, which is the same thing that applies to every officer in the state of Tennessee. So there's some minimal degree of continuing education that they have to have, but we have no records about what the topics of those training was, or whether these officers received any training on the department's own use of force continuum. The expert that we proffered in the case testified that the lack of training records, along with the failure to follow the use of force continuum appropriately, is evidence of a failure to train in this case. The last point I would make is that counsel for Officer Davis describes this scene as chaotic. I dispute that interpretation. In fact, the proof is that the suspect that we're attempting to arrest, although he had committed a heinous offense, was not cursing the officer, wasn't attempting to flee, did not resist at all the attempt to arrest him. It was only Officer Davis's response to this that made the scene chaotic. And so in those totality of circumstances, we respectfully suggest to the court that the factual disputes are so vast that it was not appropriate for the district court to grant summary judgment. And you represent the plaintiff, aren't you? I do. And what was she doing with that cell phone that was sort of floating up out there? Can you explain that? I don't know. Well, she had it in her hand. Well, it's visibly lit up on the video. That's the only way you know it's a cell phone. So presumably that would have been amenable to the officer as well. Not that I'm aware of, no. Thank you both, all three, for your arguments and your briefing. The case will be taken under review.